IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.:

**ANTONIO BYRD,**
              **Plaintiff,**

   and
**MIAMI DADE COUNTY,**
              **Defendants.**
_____/

## COMPLAINT

**COMES NOW** Plaintiff, ANTONIO BYRD, by and through her undersigned counsel, hereby files his Complaint against the Defendant, the MIAMI DADE COUNTY ("hereinafter MD").

## INTRODUCTION

This civil action arises from an incident that occurred on or about February 26, 2018, during the unlawful discrimination based on the Plaintiff's disability and retaliation suffered of Plaintiff ANTONIO BYRD. The Defendant MD's employees wrongfully discriminated against the Plaintiff based upon his disability and retaliated against him after he made several complaints regarding upper management, staff, and the misclassification of the mental health inmate population.

Plaintiff ANTONIO BYRD brings federal constitutional claims against the Defendant MD as the official entity responsible for the conduct, training, and supervision of the employees under its charge. MD failed to properly train the employees in the appropriate methods, proper procedures, and protocols with respect to accommodating the Plaintiff's disability. MD had a policy and custom that constituted deliberate

indifference to the Plaintiff's constitutional claims of discrimination based on his disability, and MD's policy and custom deprived the Plaintiff of his rights under the Constitution and the laws of the State of Florida, resulting in unlawful retaliation.

## JURISDICTION AND VENUE

1. Plaintiff in his action seeks relief under the to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132 the Federal Rehabilitation Act, 20 U.S.C. § 794, and Title VII of the Civil Rights Act of 1964, including compensatory damages, punitive damages, costs, and attorney's fees, pursuant to 42 U.S.C. § 1988.

2. Venue is proper in the Southern District Court of Florida, pursuant to 28 U.S.C. §1391 (b), as the Defendant's principal place of business in Miami-Dade, and all of the acts and omissions giving rise to the action occurred in Miami-Dade County.

3. The Court has federal question jurisdiction over the Plaintiff's federal law claims, pursuant to 28 U.S.C. §§ 1331, 1343(a)(3).

4. All conditions precedent to the maintenance of the action, including those set forth in Florida Statute §768.28, have been performed, have occurred prior to its institution, or have been waived.

## PARTIES

5. At all times material hereto, Plaintiff ANTONIO BYRD is a resident of Miami-Dade County, Florida, and is otherwise sui juris. ANTONIO BYRD is an African American male with a fracture to his finger, anxiety, insomnia, and

depression that substantially impacts his physical and mental states while he is in his workplace.

6. MD is responsible, as a matter of law, for the actions of its officials, agents, and employees, and was responsible for their training, supervision, and conduct. MD is also responsible for ensuring that its personnel obey the laws of the State of Florida and ensuring that its rules and regulations are followed and enforced by its employees.

7. Plaintiff ANTONIO BYRD sues Defendant MD in its official capacity.

## FACTUAL ALLEGATIONS

*Events that Occurred from June 2016- Present*

8. In June 2016, Plaintiff BYRD was employed with the MIAMI DADE CORRECTIONS AND REHABILITATION Metro West Detention Center located at:13850 NW 41st STREET, DORAL, FLORIDA 33178.

9. Beginning on or about June 2016, Plaintiff repeatedly addressed classification issues with Lieutenant Alaro and staff alike at the Metro West Detention Facility. Plaintiff made several complaints, specifically regarding the facilities failure to address the psychiatric inmates.

10. The inmates that suffer from psychiatric problems, upon information and belief, are supposed to be housed at the Turner Gilford Knight facility in a special unit designed to address the needs of the mental health population.

11. On or about February 25, 2018, Plaintiff was physically attacked by an inmate with psychiatric and behavioral problems. Plaintiff was physically injured and was on medical leave for approximately six (6) weeks after he was attacked

by an inmate that was improperly classified. Coincidentally, this was an inmate who the Plaintiff warned MD may have been misclassified in general population.

12. Upon Plaintiff's return from medical leave, he was placed back in the general population, where the misclassification of the psychiatric inmates grew even worse. On multiple occasions, Plaintiff had staff that sent inmates needing to be evaluated for mental health due to aggressive or abnormal behaviors returned back to the same unit with Plaintiff.

13. On or about April 2018, Plaintiff filed complaints with the Internal Affairs Unit and various agencies to document the retaliation and discrimination of the Defendant to no avail.

14. During the course of his employment, the Plaintiff timely reported his disabilities to the Defendant MD.

15. Plaintiff made several complaints both written and verbal regarding his workplace for both his safety and the safety of his co-workers due to his medical diagnosis, hardship that it presented for him, and that he was being retaliated against by the staff of the MD. Plaintiff *continues* to face discrimination and retaliation until present time.

16. MD has maintained a long-standing, widespread history of failure to train, supervise, or otherwise discipline its employees for, among other things, unlawful discrimination and retaliation in the workplace even though it had notice of the unlawful conduct by its employees.

17. MD has maintained a system of review for abuses of lawful authority like discrimination and retaliation, by its employees has failed to subject employees that employed unlawful discrimination and retaliation to appropriate discipline, closer supervision, and/or retaining, to the extent that it has become the de facto policy and custom of MD to tolerate such acts by its officers.

18. Indeed, MD routinely performs cursory investigations of incidents involving extremely questionable discrimination and retaliation on the part of MD's employees, with an eye toward exonerating the employee involved rather than finding out the truth.

19. Due to the intentionally inadequate investigative process, in virtually all unlawful discrimination and wrongful retaliation, MD has declared the conduct of its employees to be justified.

20. MD's foregoing acts, omissions, policies, or customs caused employees to believe that such acts as discrimination and retaliation would not properly be investigated. The consistent lack of accountability within MD for the questionable and often unjustifiable discrimination and retaliation has promoted an acceptance of unconstitutional behavior towards employees with disabilities. The resulting culture of discrimination and retaliation promotes work place hostility.

21. Despite MD's notice and knowledge of the impartial and biased propensities of their employees because of said employee's lack of training, skill, and/or

experience, MD failed to implement any policies or programs to train said employees or otherwise intentionally failed to protect the Plaintiff.

22. MD had policies, customs, and practices that constituted deliberate indifference to Plaintiff's Constitutional Rights pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132 and the Federal Rehabilitation Act, 20 U.S.C. § 794.

23. The policies, customs, and practices complained of include, but are not limited to the following:

    a. Deliberate indifference by failing to provide sufficient supervision of the disability in question and by failing to monitor the situation in question;

    b. Deliberate indifference by improperly training MD employees in such a way that condones, encourages, and permits their agents to violate the rights of citizens that are encountered.

    c. Deliberate indifference in failing to properly supervise MD employees in their encounters with persons with disabilities;

24. MD's deliberate indifference, failure to train, failure to effectively supervise, and its permission (and toleration of) the patterns and practices enumerate above, were the moving forces causing the serious injuries to Plaintiff and the violation of Plaintiff's Constitutional Rights.

25. The actions of Defendant in this case, as well as the actions of Defendant in other similar situations, indicate that the employees who violated ANTONIO BYRD's rights acted in accordance with MD's policies and reflect policies were adopted by MD and their officials.

26. The failure of MD to completely investigate the unlawful discrimination, wrongful retaliation, and to institute appropriate disciplinary and restraining action in the wake of them, severs to tacitly condone the egregious misconduct of the employees involved. The agency's inaction in this regard effectively annuls its official general orders regarding accommodations based on a disability and substitutes in their place a permissive de facto policy and custom of tolerating unlawful discrimination and retaliation, which will invariably have the effect of promotion similar misconduct by other employees in the future. In sum, the pattern of not obeying the law on the part of the MD employees stems from systematic deficiencies in training and supervision and from the inadequate investigation and routine infraction of illegality.

27. The Defendant took retaliatory actions against the Plaintiff by failing to honor his requests to amend policies and procedures for safety purposes and taking no action regarding an accommodation for his disability.

## COUNT I

**Count One**
**(ADA and Rehabilitation Act Claims Against Defendant MD)**

28. Plaintiff repeats and realleges paragraphs 1 through 27 as if fully set forth herein.

29. The Federal Rehabilitation Act prohibits discrimination against an individual based on disability by any program or entity receiving federal funds. 29 U.S.C. 794(a) and (b)(2)(B).

30. Title II of the Americans with Disabilities Act prohibits disability-based

discrimination by any public entity. 42 U.S.C. §§ 12131-12132.

31. These disability anti-discrimination laws impose an affirmative duty on public entities to create policies or procedures to prevent discrimination based on disability. The Plaintiff is a person with a disability as defined in the Rehabilitation Act and Title II of the ADA.

    a. Defendant MD is a program or entity which receives federal financial assistance.

    b. Defendant MD is a public entity as defined by Title II of the ADA.

    c. Defendant MD is an agency and its operation comprise a program and services for purposes of Title II of the ADA.

32. The Plaintiff is an employee with the Defendant MD.

33. The Plaintiff was discriminated against because of his disability by MD's agents and employees at MD. Such acts constitute discrimination against an individual based on their disability in violation of the Rehabilitation Act and Title II of the ADA.

34. The discrimination suffered by the Plaintiff at the hands of MD's agents and employees denied him the benefits of his employment with MD in violation of Title II of the ADA.

35. The discriminatory and retaliatory conduct was carried out by Defendant MD's agents and employees while acting within the scope of their employment by MD. Defendant MD is liable for the actions of its agents and employees when they committed the violations of the Rehabilitation Act and Title II of the ADA alleged herein.

36. MD has discriminated against the Plaintiff, by failing to provide a non-

abusive, safe working environment within the County that will allow employees with disabilities to maintain employment within the agency.

### Request for Relief

37. As a further direct and proximate result of the conduct described above, Plaintiff ANTONIO BYRD suffered loss of health and mental anguish. These losses are either permanent or continuing, and ANTONIO BYRD will suffer losses in the future, in violation of his civil rights. Plaintiff has also agreed to pay the undersigned a reasonable attorney fee for services provided.

**WHEREFORE,** Plaintiff prays for the following relief:

a. Judgement for compensatory damages in excess of $100,000.00;

b. Judgement for exemplary;

c. Cost of suit;

d. Reasonable attorney's fees, pursuant to 42 U.S.C. § 1983;

e. Trial by Jury as to all issues so triable; and

f. Such other relief as this Honorable Court may deem just an appropriate.

### COUNT II

**Count Two**
**Request for Relief**
**(Violation of Title VII of the Civil Rights Act of 1964)**

38. Plaintiff repeats and realleges paragraphs 1 through 27 as if fully set forth herein.

39. Title VII of the Civil Rights Act of 1964 prohibits discrimination based on race, color, or national origin in employment where there are at least fifteen employees including State, Federal, and local governments.

40. As an employee with Miami Dade Corrections and Rehabilitation, Plaintiff had the right not to be subjected to race discrimination, including work place hostility and harassment. Plaintiff also had a substantive due process right to, and liberty interest, in his physical safety.

41. At all relevant times, Defendant had a duty to provide a safe and nondiscriminatory environment for its employees, free from discrimination, violence, harassment, and to resolve reports or complaints of discrimination, violence, or harassment promptly, equitably, and adequately.

42. At all relevant times, the Defendant continuously discriminated against the Plaintiff in violation of Title VII of the Civil Rights Act of 1964, by depriving him of his constitutional right to equal protection of the laws pursuant to the State and Federal Constitutions.

43. The Plaintiff's constitutional right to equal protection of the law was violated by the Defendant, due its racial discrimination, violence, and harassment.

44. The Plaintiff's equal protection rights were further violated due to the Defendant's unofficial policies, customs, and practices of failing to act to protect its employees from racial discrimination, violence, and harassment.

45. By as early as June 2016, Defendant had actual notice that Plaintiff was in fear for him and his coworkers' lives. This notice alerted and informed the Defendant that inmates at the facility were wrongfully classified, therefore,

posing a serious danger to the staff and inmates alike. Defendant also received other reports and complaints about the predatory behavior of inmates and staff alike at Metro West Detention Center.

46. Defendant had a duty to promptly and adequately report, and then safeguard its staff and inmate population from the risk of further violence, discrimination, and harassment pursuant to Federal and Florida law and its own rules, regulations, policies, and procedures.

47. Each of the Defendant's officials, administrators, agents, and employees who received notice of the misclassified mental health inmate population's dangerous violent propensities, including Captain Lewis and Lieutenant Wilson had the authority, collective, or individually, to initiate corrective action to remove the misclassified inmates and/or to supervise the mental health inmate population so as to prevent the risk *they* posed to staff.

48. Defendant failed to take appropriate action to either remove or appropriately supervise the mental health unit.

49. At all relevant times, Defendant failed to conduct a prompt, impartial, reasonable, reliable, and thorough investigation of the complaints against all the employees trained and experienced in handling race discrimination complaints, as well as applicable Federal and Florida Laws, and Defendant's rules, regulations, policies, and procedures.

50. At all relevant times, Defendant also failed to establish and institute sufficient corrective measures to safeguard its staff from the risk of further discrimination, violence, and harassment by the inmates and staff alike. This

includes, but is not limited to: (i) Defendant's failure to sufficiently limit, restrict, supervise, and monitor the mental health inmate population's behavior, communications, interactions, and relations with staff; (ii) Defendant's failure to take precautions that were sufficient to prevent further predatory behavior upon staff; and (iii) Defendant's failure to otherwise abide by Federal and Florida law and to establish, implement, and abide by sufficient rules, regulations, policies, and procedures with regard to reporting, investigating, documents, and redressing race discrimination, and harassment.

51. At all relevant times, Defendant was deliberately indifferent to the known dangerous violent propensities posed to staff by the misclassification.

52. Despite its actual notice of the inmate's dangerous propensities, Defendant continued to allow the inmate's unfettered access to staff of the Metro West Detention Center. In doing so, and by subsequently permitting the misclassified mental health inmates to continue to remain in the general population of the facility, Defendant made an official decision to ignore known violence, discrimination, and harassment of the staff while in the Defendant's care.

53. As a result of Defendant's gross failures to adequately respond to its actual notice of the race discrimination, Plaintiff was retaliated and harassed by the staff in violation of Title VII of the Civil Rights Act of 1964, Florida, and the Federal Constitutions.

54. As a further result, Plaintiff has suffered, and continues to suffer, substantial injuries, harm, and damages. This includes, but is not limited to, severe and

permanent emotional, psychological, and physical injuries, pain and suffering, depression, fear, anxieties, inability to function normally in social situations, shame, humiliation, and the inability to enjoy normal life. Such harms and injuries are continuing and permanent. Plaintiff has also undergone medical and psychological treatment and incurred medical and other expenses.

55. As a further direct and proximate result of the conduct described above, Plaintiff ANTONIO BYRD suffered loss of health and mental anguish. These losses are either permanent or continuing, and ANTONIO BYRD will suffer losses in the future, in violation of his civil rights. Plaintiff has also agreed to pay the undersigned a reasonable attorney fee for services provided.

**WHEREFORE,** Plaintiff prays for the following relief:

g. Judgement for compensatory damages in excess of $100,000.00;

h. Judgement for exemplary;

i. Cost of suit;

j. Reasonable attorney's fees, pursuant to 42 U.S.C. § 1983;

k. Trial by Jury as to all issues so triable; and

l. Such other relief as this Honorable Court may deem just an appropriate.

Date: November 13, 2018

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 13, 2018, I electronically filed the foregoing which will send a notice of electronic filing to the following:

**Miami Dade County**
**111 NW 1st Street**
**Miami, Florida 33128**

Respectfully Submitted,

**THE DAVIS LEGAL CENTER**
*/s/ Dameka L. Davis, Esq.*
Dameka L. Davis, Esq.
Florida Bar No.: 0110587
2719 Hollywood Boulevard, A-1187
Hollywood, Florida 33020
Telephone: 954-256-5958
Fax No.: 954-272-7665
Email: davislegalfl@gmail.com
